### ED GIVENS v. THE STATE.

*No. 1012.   Decided March 11th, 1896.*

**1.  Assault With Intent to Murder—Evidence—Identification of Defendant by His Voice.**

On a trial for assault with intent to murder, where the shooting was into a house from the outside, at night; and before the shooting defendant had had a difficulty with the party living in the house; and, afterwards, before the shot was fired, his voice was recognized by several parties, who had known him for years, as he called to the party, with whom he had the difficulty, to come out. Held: That the defendant was identified positively by his voice, and, as to his identity, it was not a case of circumstantial evidence.

**2.  Charge as to Testimony Impeaching a Witness.**

Where evidence has been introduced impeaching a witness for truth and veracity, it is not required of the court to charge as to the purposes and effect of such impeaching testimony. A general charge that the jury are the judges of the weight of the testimony and credibility of the witnesses, is sufficient.

**3.  Assault With Intent to Murder—Proof as to the Deadly Character of Weapon Used.**

On a trial for assault with intent to murder, it is only necessary to show, that the weapon, as used, was capable of producing death in the manner in which it was used; and evidence which showed that the ball, fired from defendant's gun, passed through one wall of a house and struck another, is sufficient to show, that had it struck the party shot at in a vital point, it would likely have penetrated and caused death.

**4.  Same—Intent.**

A party's motive and intent are generally manifested by his acts and declarations.

APPEAL from the District Court of Brazoria.   Tried below before Hon. T. S. REESE.

This appeal is from a conviction for assault with intent to murder, the punishment being assessed at four years' imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

*R. C. Duff*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

[No briefs found with the record.—Reporter.]

. DAVIDSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and given a term of four years in the penitentiary. By the statement of facts it is shown that, on the afternoon before the shooting at night, the appellant and Wes Williams had a little sparring match, which started pleasantly or in fun, and terminated in the defendant becoming angry with Wes Williams. The defendant asked Williams if he was mad, who replied, "This is nothing to get mad about." The defendant repeated this two or three times, and witness (Williams)

again said, "No, Ed; I am not mad, but you seem to be; and, if you are mad, this no place to fuss—at a man's house. If you wish a fuss, let's go away from the house." The witness then turned around and left. The defendant continued cursing, got his gun, and followed the witness and John Carr, who said to the witness, "You had better go home. Don't you see Ed has his gun?" Witness then went home, and stayed there until 8 o'clock. Defendant went to witness' house, and called to him to come out. Witness said to the defendant, "Ed, this is bad—to come to a man's house at night, cursing him." Witness' wife said, "Don't you go. Ed means to harm you." "And I (witness) told him to go away; I did not want to see him." The witness' wife then said to Ed Givens, "You go away from my house. Wes don't want to see you." And defendant then said, "I came to kill the damned son-of-bitch; and if he will stick his head out, I will kill the God damned son-of-a-bitch." Witness' wife again ordered the defendant to leave the premises. He stated that he would not—that he came to kill the witness, Williams. The witness' wife again said to him, "I told you to go, and you will not. Now I will make you go." She was sitting on one side of the house, and her husband on the opposite side, near one corner of the room, when she made this remark. She then got up out of the chair where she was sitting, having her baby in her arms, and walked over towards the bed. As she got up from the chair a noise was made, and Givens (the appellant) fired. The ball came through the wall of the house about five feet to the left of the door, and about knee high above the floor. The ball was found in the cradle. The shot was fired just as witness' wife said, "If you won't go away, I will make you." The witnesses identify the defendant, mainly by his voice, as being the man who fired the shot. It was dark, and the defendant talked both before and after the shot was fired. The witnesses who identified the defendant by his voice had known him for several years, and were positive as to his identity. Appellant contends, in this case, that the court should have given a charge on circumstantial evidence, because, he says, the evidence was wholly circumstantial. We do not so understand the record. The appellant was identified as the party making the assault by the witness, Wes Williams, who recognized him by his voice. The testimony shows that both he and his wife held a conversation with the defendant, who was outside of the house. He was also identified by the witness, Nancy Carr, as the person who fired the shot.

Appellant also assigns as error the failure of the court to charge as to the effect of the testimony adduced by the State to impeach appellant's witness, Teasly, on the ground that his reputation for truth and veracity was bad. The contention of the appellant in this regard is, that the court should have charged as to the object and purposes of the impeaching testimony. In this connection it will be remarked that appellant also introduced testimony showing the reputation of the said Teasly for truth and veracity was good. We do not understand that it is re-

quired of the court to charge as to the purposes and effect of such impeaching evidence. The general charge given as to the weight of the testimony and the credit to be given to the witnesses by the jury, is sufficient. In this connection, appellant refers to what some of the jurors understood as to the effect of the impeaching testimony. If the State had only introduced evidence of the character indicated, and none had been introduced in rebuttal by the appellant, the suggestion of counsel might appear plausible; but certainly, when there is evidence pro and con on the subject, and a juror should understand and state that, where evidence is introduced on the subject, he regarded the witness as impeached, and set aside his testimony altogether, such contention does not appear even plausible, but rather looks like stultification on the part of the juror. Appellant urges that this case should be reversed, because the evidence does not show any deadly weapon was used. On this subject, it is only necessary to show that the weapon as used was capable of producing death in the manner in which it was used. In this case appellant, without any pretext of justification whatever, went to the house of Williams with a gun, with the avowed purpose of killing him, and threatened repeatedly to do so, demanding that he come out. On his refusal to do so, he fired the gun into the house; the ball passing through one wall and striking another. From the force of the shot it would appear to the ordinary understanding, that, if it had struck Williams, instead of the wall, in a vital part, it would likely have penetrated and caused death. That he shot wide of his mark makes no difference. His purpose and intent was manifested by his declarations and acts. The jury that passed on the case found that he had such purpose, and that he had the ability, with the weapon used, to cause the death of the said Williams. They found him guilty of an assault with intent to murder, and the evidence amply sustains the conviction. The evidence is sufficient to support the verdict, and the judgment is affirmed.

*Affirmed.*