ANDREW HODGES v. THE STATE.

No. 16402. Delivered December 20, 1933.
State's Rehearing Granted March 14, 1934.
Appellant's Rehearing Denied May 23, 1934.

The opinion states the case.

*Davis & Davis*, of Haskell, and *Glover Engledow*, of Claire-mont, for appellant.

*Hendry F. Grindstaff*, District Attorney, of Aspermont, and *Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted

of the offense of robbery by the use of firearms, and his punishment assessed at confinement in the state penitentiary for a term of 20 years.

The facts as proven upon the trial are in substance as follows: On the night of the 4th of May, 1933, at about dark, two men came to the home of John York and assaulted him and his wife with firearms and robbed them of $20.00, a pistol and a rifle. At the time that the men entered the home of Mr. and Mrs. York there was an ordinary oil lamp burning in the house which lighted the same. The testimony further shows that one of the men grabbed Mr. York and the other Mrs. York and in the scuffle Mr. York was beaten over the head with a pistol, knocked down on the bed, and ordered to cover his head, while the other man commanded Mrs. York to get the money and turn it over, which she did, and then was told by one of the men that he knew that they had a pistol and a rifle and to get them, which she did, and turned them over to the robbers. Not being satisfied with the amount of money they had obtained they searched the premises for more money, and not finding any they left. The testimony also shows that on Saturday and Sunday prior to the Thursday when the robbery was committed, the accused was seen in company with two strange men, presumably from Oklahoma. The testimony further shows that appellant resided within one-half mile of the home of the Yorks for a period of approximately five or six years; that Mrs. York had known him casually for about five years, and Mr. York had known the appellant about fifteen years and the appellant had shaved Mr. York and cut his hair several times. Within a short time after the robbers had left the home of Mr. and Mrs. York the officers were notified and they immediately went to the home of the Yorks to make an investigation. Mrs. York testified that she did not recognize either of the parties because the one who ordered her to get the money, pistol and rifle held his hand over his mouth. She further testified that Tom Long, deputy sheriff, Lee Owens, and Walter Owens came to their home that night and she told them what had happened but did not tell them that defendant was one of the men who robbed them; that the next morning she saw Mr. Bingham and Mr. Goodall and told them that she did not know who the parties were. Mr. York testified to substantially the same facts. At the trial Mrs. York stated that two weeks after the robbery the defendant passed their home and spoke; he said, "Howdy." She then recognized the defendant by his eyes and his voice, stating that the man who robbed them had brown eyes, but on

cross-examination she said she did not see his eyes. Mr. York testified that about two weeks after the robbery when the defendant passed their home he said "Howdy," and he then recognized him by his voice. Not any of the money nor the pistol or rifle were found in possession of the defendant. The defendant's defense was that of an alibi and was supported by the testimony of his brother and his sister-in-law. The district attorney, it appears, had secured a photograph of two parties (presumably the two parties from Oklahoma) and while the witnesses Mr. and Mrs. York were on the witness stand asked them if either of the parties was one of the parties who robbed them. They said that in some respects one resembled one of the robbers and in some respects he did not.

By bill of exception No. 2 the appellant complains of the action of the trial court in permitting the district attorney to ask Mrs. I. W. Hodges, while testifying on cross-examination, whether one of the men in the picture was one of the men who had been at her home on Sunday prior to the alleged robbery, to which the defendant objected because the same shed no light upon the issue and could serve no purpose other than to prejudice the rights of the defendant before the jury and the same was inflammatory, which objection was overruled by the court and said witness was required to answer said question, and she answered that she could not say either way; that she paid little attention to them, to which action of the court the defendant then and there excepted. We do not see the relevancy of this testimony under the charge in the indictment. The appellant was not indicted as a co-principal with either of the men appearing in the picture and there was no evidence in the record that would have tended to connect either of the parties from Oklahoma with the commission of the offense. However, we do not believe that the same is of such harmful nature as requires a reversal of this case. What we have said with reference to bill of exception No. 2 applies to bill of exception No. 3, which embraces the same subject matter.

By bill of exception No. 4 the appellant complains of the action of the trial court, after the State and defendant had rested, in permitting the district attorney, over the objection of the defendant, to take the witness stand and testify that he had shown the picture to the witnesses for the State and that Mrs. York had identified one of the pictures as being a picture of one of the men who robbed them on the night of May 4th, and that said picture was the same picture he had exhibited to the witnesses Buck Hodges and Eb. Smith and to the defendant. We

have reached the conclusion that this testimony of the district attorney was clearly hearsay, inadmissible, and was an attempt on the part of the State to bolster up the testimony of the State's witness Mrs. York, who had failed to positively identify the picture as being a picture of one of the men who robbed them on the night of May 4th, 1933. We believe that the admission of said testimony is such error as requires a reversal of this case, and in support hereof we cite the following case, to-wit: Turner v. State, 89 Texas Crim. Rep., 615, 232 S. W., 801, and cases there cited.

By bill of exception No. 1 the appellant challenges the sufficiency of the testimony to warrant and sustain the conviction. We have carefully examined the statement of facts and are of the opinion that the same presents a very serious question. The law requires that the proof must show the defendant's guilt beyond a reasonable doubt. That the offense was committed is established by the testimony, to our minds, beyond a reasonable doubt, but the appellant's identity as one of the parties who committed the offense raises the grave and serious question in this case.

For the error pointed out, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

#### ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—In view of the State's motion, and oral argument in support thereof, we are persuaded that we were in error in predicating a reversal upon bill of exception No. 4. In order to appraise said bill properly it is necessary to examine the record in order to correctly understand the exact question before the court when the ruling was made of which complaint is brought forward in said bill. From the record it is apparent that it was the theory of the State that the robbery was committed by appellant and one of the parties from Oklahoma with whom appellant was associating on Saturday and Sunday before the robbery occurred on the following Thursday night. During the examination of Mrs. York, Buck Hodges, Eb Smith and appellant himself the district attorney exhibited to each of the witnesses a photograph, and interrogated them about it. Mrs. York, upon being asked about the picture, testified: "I think this one (indicating) looks kinder like the one with him

(appellant). I am not sure though." Buck Hodges, brother of appellant, when shown the picture, testified: "The picture you show me looks a little like the man that was with Andrew on that Saturday afternoon, looks a little like him, and they drove off in a practically new car. I think it was a Chevrolet coupe. Yes, Andrew left my house Saturday night with this man. The first time I saw him and the last time I saw him he was with Andrew. He was with him on Saturday night prior to the robbery on Thursday night, and he was with him also on the Sunday following this Saturday." Eb Smith had testified that on Saturday night two strangers were shaved in witness' barber shop and that he saw appellant drive away with them. Regarding the pictures shown him, the witness said: "After looking at this picture I will state that it resembles one of the parties that I shaved there that night." Appellant testified: "After looking at this picture handed me I will state that in some ways it resembles one of the parties, and in some ways it don't. I really don't think that is a picture of the fellow that was driving the Chevrolet car, but in some respects it resembles him." The picture shown the various witnesses was not introduced in evidence, and there was no way for the jury to know whether the same picture had been exhibited to the different witnesses unless in some way appraised of that fact. The district attorney was placed upon the witness stand for the purpose of supplying this information. Bill of exception No. 4 reflects that the district attorney was handed a picture by his associate counsel, who asked witness "if said picture was the same picture that had been shown to the witnesses for the State during the progress of the trial." The question was objected to upon the ground that it was prejudicial and inflammatory and would not serve to prove any issue in the case. The court was called to rule upon the question then before it. Under the facts it was a perfectly proper question and not subject to objection, and the court correctly so ruled. In answering the question the district attorney said "the picture handed him was the same picture as identified by said Mrs. York as being one of the characters that robbed them on the night of May 4, 1933, and the same picture exhibited to the witnesses Buck Hodges, Andrew Hodges and Eb Smith." If, in repeating what Mrs. York had said about the picture, it was thought the district attorney's answer misconstrued Mrs. York's language, or that the answer was not responsive to the question, or went beyond what was called for by the question, some effort should have been made to have the answer in the respect mentioned withdrawn and the

jury instructed to disregard it. No such request was made. If anything improper occurred it was not in overruling objection to the question, but is referable to the answer regarding which the court was not called upon to take any action. The exact point was before this court in King v. State, 95 Texas Crim. Rep., 93, 253 S. W., 262, in which it was held that the court having acted correctly on the only question upon which he was called to rule, no error was presented by the bill which is like the one now under discussion.

In our original opinion we expressed some doubt regarding the sufficiency of the evidence. Believing at that time that the judgment should be reversed upon the complaint in bill of exception No. 4, the evidence was not scrutinized as closely as has been done since changing our views regarding the bill mentioned.

It is established beyond question that two men robbed Mr. and Mrs. York. After knocking Mr. York in the head, one of the men compelled him to lie on the bed with his head covered, and stood guard over him with a shotgun. The Yorks make no claim to knowing him. He was thought to be the party whose picture was exhibited to the witnesses. The other robber held a pistol on Mrs. York and compelled her, accompanied by him, to go into various rooms of the house to get money and different articles named by him, of the presence of which he appeared to have knowledge. This man kept his hand over his mouth all the time, and had on a hat which he had pulled low on his head thereby concealing a part of his features. He is the man identified during the trial by the Yorks as appellant. The light in the house was not very good, being furnished by an ordinary kerosene lamp. After Mrs. York had given them all the money that was on the place, the man now identified as appellant insisted that there was more money, telling her he knew that she and her husband had drawn their money from the Jayton bank before it closed, and insisted that said money was in the house. When told that the money had been deposited in the Peacock bank, he said it was a lie and insisted that she tell where it was hidden. He also demanded a pistol and rifle and cartridges for the latter, which he appeared to know was on the place. During the robbery he several times called Mrs. York by name. Upon being asked how he knew her name, he replied, "Do you think I have been here all this time and don't know anything." Appellant lived with his brother, whose house was near and in sight of the York home. Mr. York had known appellant for some twelve or thirteen years, had been shaved by

him and had frequently talked to him. Mrs. York had known him six or seven years, had heard his voice occasionally, and had heard him sing at church where appellant sometimes led the choir. Telling about the robbery, Mrs. York testified:

"I couldn't tell just then (that is, during the robbery) who it was, only their voices I could hear, I could not get a good look at them. * * * The one that was guarding me kept his hand over his mouth when he talked,—I never seen his mouth at all. * * * I heard his voice there that night several times. * * * I tried several times to see his face but I could not, and when I did he told me not to look at him,—said if I did he would kill us both."

The robbery occurred on the night of May 4th, and the Yorks first reported on May 17th to the sheriff that appellant was one of the robbers. He came by their house that day and spoke to them, and they say that they then knew his voice to be that of the robber who kept his hand over his mouth during the robbery. Mrs. York testified:

"I am positive to his voice as well as his eyes."

Appellant proved that Mrs. York had said in the presence of certain witnesses that she did not recognize either of the robbers, and did not claim in the conversation with the witnesses to have recognized as familiar the voice of either of them. After this proof was made, the State called the sheriff as a witness, who testified that he did not talk to the Yorks very much on the night of the robbery regarding it, but did talk to them the next morning, at which time Mrs. York said that "she recognized the voice of one of them (the robbers) and she told me it was someone she had seen and said she would recognize him if she saw him again." The sheriff had talked to Mrs. York probably three times between the day of the robbery and the 17th of May, but she did not tell him until the latter date that appellant was one of the robbers, and this was after she had heard the appellant's voice on the morning of May 17th. Regarding this matter Mrs. York testified that she did not see appellant between the night of the robbery and the morning of May 17, at which time he passed her house, and she swore "I saw him when he passed our house. I heard his voice and saw his eyes * * *. He turned and looked right at me and I looked straight at him and he turned his head." Mr. York, speaking of the same incident, testified: "He stopped and turned around and we saw who it was, saw him good. He spoke to me, said 'Howdy' like that, but he would not speak to the woman (Mrs. York), but turned his head when she looked around. He kept

his back to her as much as possible." Mrs. York was recalled by the defense for further cross-examination and testified that on the very day (May 17) when she first saw appellant after the robbery, she then reported to Sheriff Bingham that appellant was the man who robbed her. On the question of identity, Mr. York, in his testimony regarding the man who kept his hand over his mouth during the robbery, repeatedly used expressions like, "I heard then a voice that I had heard before," and "the conversation there (during the robbery) was had by the man whose voice I recognized as having heard before." Mr. York testified positively that when appellant, some twelve or fourteen days after the robbery, passed the house and spoke, he immediately knew the voice as that of one of the robbers. Mr. York swore:

"The voice that I heard there in the room that night that I recognized as having heard before, and the voice I heard several days later, that I recognized to be the same voice I heard that night, is the same voice. I am sure about that. I don't think I could be mistaken now. * * * Yes, I have known him (appellant) some ten or twelve years, and have seen him lots of times, and have seen him at church a good many times, he kinder helped lead the singing and I have talked to him a good many times and knew him about as well as I did anyone around there. * * * During this occurrence, and while it was going on, one of these parties addressed Mrs. York and called her by name, and Mrs. York said to him, 'How did you know my name?' and he said, 'Do you recon I have lived here always and never learned anything?' That was the voice of the person whose voice I have described as recognizing. At that time there was also something said about money in Jayton bank, said we had drew it out before it closed; that I had cashed a check and had the money hid around there somewhere. This is the same voice I have described as having heard before this occurrence, and is the voice which I have described as being the voice of the defendant, and after that I saw and identified the defendant as being one of the men."

We are asked to hold that the evidence of the State is insufficient on the question of the identity of appellant as one of the robbers. Appellant denied his participation in the transaction, claiming that he was at his brother's house in bed. He was supported in this by his brother and his brother's wife. The jury declined to believe the defensive testimony. In determining whether the evidence supports the conviction, resort must be had to the State's testimony. As we analyze the evi-

dence given by Mr. and Mrs. York on the question of identity, they were—regarding the voice—in the same position as one who, upon a particular occasion, recognizes a face as one he had seen before but not able, at the time, to recall the name of the party whose face he sees, yet when seen again, immediately knows it to be the same face seen on the occasion in question. Th voice sometimes stamps its individuality as effectively as a face. Obviously, this court, reading the evidence and not hearing the voice, is in no position comparable with the jury to determine the issue upon which we must—if appellant's position is sustained—substitute our judgment for theirs. In Davis v. State, 15 Texas App., 594, the accused was charged with arson. A witness testified that he recognized him by his voice. Upon the same contention as here made, this court, speaking through Judge Hurt, said:

"Do the facts support the verdict? We are of the opinion that they do. A witness may, with very great certainty, identify a person by his voice; and, if this can be done, certainly the witness Smith was competent to identify defendant by this means, for he had known him thirteen years and lived within half a mile of him for a great many years."

See also upon the same point, Givens v. State, 35 Texas Crim. Rep., 563; Reynolds v. State, 63 Texas Crim. Rep., 270; Briscoe v. State, 106 Texas Crim. Rep., 402, 292 S. W., 893.

Manifestly it is impracticable to set out in this opinion all of the facts, but further consideration thereof leads us to conclude that the evidence is sufficient to support the finding of the jury and that we would be unauthorized to disturb it. Therefore, the State's motion for rehearing is granted, the order reversing and remanding the case is now set aside, and the judgment of the trial court is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Urging that the testimony of Mr. and Mrs. York was unreasonable and contrary to human experience,—appellant insists that the evidence in this case is not of such cogency and credibility as to justify his conviction. We do not think it contrary to human experience for men and women to meet persons whom they have met before and be temporarily unable to place or identify them, and later either by the exercise of memory or at some subsequent meeting,— be able to recall and identify such person. We incline to the view that this is neither unreasonable nor contrary to human

experience. Concretely, this is what occurred in the case before us.

Partial or incomplete identification of a person, or an object such as a picture of a person, by a number of witnesses would seem merely to go to the weight and sufficiency of such identification, and the greater the number of those whose opinions support such identity, the greater the certainty of identification would seem. We think the trial court justified in admitting testimony as to the resemblence of a picture to a party seen with appellant just before the alleged robbery, which picture was shown to a number of witnesses.

We can not add to what we said in disposing of appellant's bill of exceptions No. 4, in our former opinion. The district attorney was put upon the stand for the purpose of connecting up as the same, a picture shown to various witnesses before the jury. The question asked him was proper. If there was any objection to his answer, or any part of it, same does not appear. Nor do we think the statement in the latter part of said bill of exceptions, referring to the overruling of objections to the "questions and answers," sufficient to bring us to conclude that there was some objection made to the answer which does not appear in the bill. We think the matter properly disposed of.

Appellant insists that his bills of exception Nos. 6 and 7 show error. Without going into extended discussion of same, we are of opinion that they cover practically the same ground and reflect nothing unfair or unjust to appellant. He was asked if before the holding of the court of inquiry concerning this matter, he had employed a lawyer, and,—as shown in each bill,—answered that he had not. The matter of his consulting with Mr. Davis, as set out in bill of exceptions No. 7, does not seem to have been objected to, but was in answer to a question, neither the answer nor the question seeming to have been made a matter of objection. We also note upon examining bill of exceptions No. 7 that the reference to community gossip, elaborated upon as very objectionable in appellant's motion, appears first in a voluntary answer by appellant himself in response to a question which called for no such answer.

In view of the qualification appended by the trial court to bill of exceptions No. 9, we think the State's attorney not out of the record when he argued to the jury that appellant knew before the date of the robbery of the Yorks that they had a Winchester rifle in their house. Mrs. York testified that during the process of said robbery this appellant told her that he knew

they had a Winchester rifle, demanded same, and that she got it and gave it to him. It would appear an altogether unwarranted assumption that by what he said in said argument the State's attorney was attempting to put before the jury a fact known by him aside from the testimony.

We have carefully considered the able motion for rehearing and the interesting question raised, but are not able to agree with appellant's contentions, and same will be overruled.

*Overruled.*